IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ABDUL SALAM BADMUS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | C. A. NO. 4:15-CV-1149 |
| | § | |
| MUTUAL OF OMAHA | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND FOR ATTORNEY'S FEES

TO THE HONORABLE UNITED STATES SENIOR DISTRICT JUDGE:

Defendant Mutual of Omaha Insurance Company ("Mutual of Omaha") files this Motion for Summary Judgment and respectfully shows as follows:

### I.

### NATURE AND STAGE OF PROCEEDING

Plaintiff Abdul Salam Badmus has been indicted for insurance fraud by the State of Texas as a result of his actions in connection with this claim. In this lawsuit, Plaintiff seeks accidental death benefits allegedly owed to him under a policy issued by Mutual of Omaha to Selem Babatunde Badmus (the "Insured"). Plaintiff had submitted a claim contending that the Insured died on January 24, 2014 in a motor vehicle accident in Lagos, Nigeria. After retaining an investigator in Nigeria, Mutual of Omaha denied benefits because there was not valid written proof of the Insured's death or any proof of the accident occurring. Plaintiff then filed this lawsuit for breach of contract, statutory and common law bad faith, misrepresentation of insurance policy, and alleged violations of the Texas Insurance Code. In the course of investigating this suit, evidence has come to light demonstrating that Plaintiff and the Insured are

1

one and the same person. Most telling, on May 24, 2015, Selem Babatunde Badmus (the alleged deceased Insured) formally changed his name to Abdul Salam Badmus in a Texas court of law. Thus, Mr. Badmus has faked his own death, and has been charged by the State of Texas with felony insurance fraud, by indictment filed July 19, 2016. (*See* Exhibits A, CC, DD, EE).[1]

Mutual of Omaha acted correctly in denying Plaintiff's claim for benefits. A living person is not entitled to recover accidental death benefits. Therefore, Defendant files this Motion for Summary Judgment in its favor and seeks recovery for the fees and costs it incurred in defending this unwarranted and fraudulent lawsuit. A hearing is requested.

## II.
## SUMMARY OF ARGUMENT

In this lawsuit, Plaintiff seeks payment of $750,000.00 in accidental death benefits allegedly due under a policy issued by Mutual of Omaha to Selem Babatunde Badmus. Mutual of Omaha conducted a thorough investigation of Plaintiff's claim and found no proof that Selem Babatunde Badmus had died in an accident. Now, the available evidence indicates that the opposite is true. Selem Babutunde Badmus is alive, and he is the person who filed this lawsuit. The suit should be dismissed, as a matter of law. Additionally, Plaintiff should be sanctioned under this Court's inherent power for filing an unwarranted and fraudulent lawsuit.

## III.

## UNDISPUTED FACTS

A. **The Policy**

This is a claim for payment of accidental death benefits under Mutual of Omaha Insurance Company Accidental Death Insurance Policy No. E42ADR41-197023-28M issued on

---

[1] Defendant respectfully requests this Court to take judicial notice of the State of Texas Indictment (Exhibit A), as well as the Petition to Change the Name of an Adult from Selem Babatunde Badmus to Abdul Salam Badmus (Exhibit CC), and Final Order Changing the Name of an Adult (Exhibit DD).

August 10, 2009 to Selem Babatunde Badmus. (*See* Exhibit B: Policy, MO-BADMUS-000001 to 13). The Policy provides a benefit of $750,000 for loss of life to the Primary Insured caused by Injury sustained while riding as a passenger in any public land, air or water conveyance provided by a Common Carrier. *Id.* at 5, 6. "Common Carrier" is defined as "an entity that is licensed to transport passengers for hire in any public land, air or water conveyance." *Id.* at 5. The Policy provides for payment of a lesser amount for benefits if death is caused by injury sustained while driving or riding in any Private Automobile or by other means. *Id.* at 1, 6.

Selem Babatunde Badmus completed a policy application on 8/1/2009 and gave his Date of Birth as 5/21/1950. *Id.* at 13. The Insured's address was given as 30771 Tamarack St., Apt. 41212, Wixom, MI 48393-2739. No Beneficiary was identified on the application, which had the effect of making benefits on death payable to the Insured's estate. *Id.*

The Insured changed his beneficiary from his estate to his alleged brother, Abdul Salam Badmus by notice dated July 22, 2013. (Exhibit C at 495). Specifically, the change in beneficiary states, "Recent personal experience with my uncle estate is prompting me to nominate my brother Abdul Salam Badmus as my beneficiary. I am going to reflect this in my will." The Nomination of Beneficiary request also reflects that the Insured's address had changed to 1430 Bell Shadow Ln. #A, Houston, TX 77038-3033. The beneficiary change became effective by endorsement issued on August 5, 2013. (Exhibit D at 492-94).

B. **The Claim**

On or about March 7, 2014 Abdul Salam Badmus sent Mutual of Omaha a "Notice of Claim and Proof of Loss," letter stating that the Insured passed away on January 24, 2014 in Lagos, Nigeria, as a result of a "ghastly" automobile accident involving a taxi cab he was riding in and a tanker truck. (Exhibit E at 473-79). The letter gave a return mailing address as P.O. Box

3

2393, Apapa Lagos State, Nigeria and his residential address as Block 337, Flat 6, Amuwo Odofin Estate, Mile 2, Lagos State, Nigeria. *Id.* at 473.   In support of his claim, Plaintiff submitted the beneficiary endorsement as well as documents entitled "Eye Witness Affidavit," "Death Certificate," "Medical Certificate of Cause of Death":

1.    The "Eye Witness Affidavit" purports to be Sworn to at High Court Registry in Lagos on March 5, 2014 by Abdul Lateef Salako, Male Nigeria of Mechanic Village, Abule Egba. The affidavit states that Mr. Salako was driving on January 24, 2014, when he saw a taxi cab that had collided with a fuel truck. He got out of the car to help the occupants of the taxi cab, but both were deceased. The affidavit states that a photo identity card with the name Selem Badmus, date of birth May 21, 1950 was discovered with the person in the back seat of the cab with his seatbelt fastened. The affidavit further states that the bodies were taken to the hospital. *Id.* at 477.

2.    The Certificate of Death for the Federal Republic of Nigeria states that it was issued on February 27, 2014, certifying that Selem Badmus died on January 24, 2014 in Lagos, and that his full address was 25 Adelabu Street, Surulere, Lagos. *Id.* at 478.

3.    The "Medical Certificate of Cause of Death" purports to be issued by Lagos State University Teaching Hospital, Ikeja, and states that Selem Badmus of 25 Adelabu Street, Surulere Lagos was shown on January 24, 2014 at 12:25 p.m. to have died from a road traffic accident as primary cause, with a secondary cause of cardiac pulmonary failure. It is purported to be signed on January 24, 2014 by Dr. A. O. Olawale, MBR. *Id.* at 479.

On March 31, 2014, Nicki Showalter, Mutual of Omaha Senior Claim Analyst for Individual Life Claims, sent Plaintiff a letter confirming that he is named as the beneficiary of the Policy. (Exhibit F at 460-472). Ms. Showalter enclosed claim forms to be completed by

2247664v.1

Plaintiff and requested supporting documents, including a copy of the deceased's passport and visa, a copy of the airline passenger receipt, a list of his travel itinerary, the name and address of the person he stayed with while in Nigeria, a copy of the police report, the name and tag number and vehicle number involved in the accident, the names and addresses of any witnesses to the accident, the name of the auto insurance carrier to include the policy number and date of issue, and information on whether the deceased was a citizen of the US, and if not, requesting a copy of the alien registration card. *Id.* Ms. Showalter repeated the request for additional information by e-mail dated April 3, 2014 (Exhibit G at 436-459).

On April 24, 2014, Plaintiff submitted his response to Ms. Showalter's request for information supporting the claim. (Exhibit H at 364-408). This response was apparently mailed from Lagos, Nigeria and was also e-mailed on April 28, 2014. *See id.* at 408. None of the documents requested by Ms. Showalter were provided. In his cover letter, Plaintiff states the information he is able to provide is limited, because "In our culture it's abnormal for me to ask for my late younger one documents or property so soon, if he was my elder it is normal to ask." *Id.* at 364.

Plaintiff completed a certified Life Insurance Claim Statement for Beneficiaries, and signed it Under Penalty of Perjury on April 17, 2014. *Id.* at 372. On that form, Plaintiff identified his own address as P.O. Box 2393, Apapa Lagos State, Nigeria and his own birthdate as May 28, 1946. *Id.* He stated that he did not have a US Social Security number. Plaintiff identified the address of the deceased as Block 337, Flat 6, Amuwo Estate Lagos Nigeria (the same address Plaintiff had previously given as his own) (*Compare id. with* Exh. E at 473). The Deceased's birthdate was given as May 21, 1950. *Id.* at 372.

The Physician's Statement for Accidental Death was left blank and most of the questions on the Foreign Death Questionnaire were left unanswered. *Id.* at 384, 388-398. Plaintiff claimed not to know his brother's employer or address, except that the home address was "Houston Texas USA." *Id.* at 388. The date the Insured left the US to travel is shown as Jan 2014, by air. Plaintiff stated he did not know the purpose or length of the trip or have any travel details. He identifies "Ashley" as the person who traveled with the Insured, but could not identify her address or phone number. *Id.* at 390. He states that the death occurred "toward Lagos end of Lagos-Ibadan Expressway after the Five Kilometre Bridge." *Id.* Nobody notified Plaintiff of the Insured's death. He claims, "I was checking from hospital to hospital, and police station to police station when I was notified by his girlfriend that he didn't return home." *Id.* Plaintiff stated there was no funeral service involved in preparation of the Insured's body. *Id.* at 392. An unidentified friend prepared the body, and Plaintiff himself conducted the service. Plaintiff stated that their father died in 1972, mother died in 1987, that he is the only sibling. *Id.* at 396, 398. He checked the box to indicate that the Insured had children, but did not name them. *Id.* at 398. He states that the Insured was not a US citizen, but knew that the Insured had a Texas driver's license because he "saw it once." *Id.*

C. **The Investigation**

Following the receipt of Plaintiff's claim packet, on May 15, 2014, Mutual of Omaha advised Plaintiff that, "due to the nature and circumstances surrounding your brother's death, it is necessary for us to obtain additional information." (Exhibit I at 273). Mutual of Omaha retained Worldwide Resources, Inc. to investigate the circumstances of the Insured's death. The investigation was conducted by Johnson Okebukola, Esq., the owner and principal investigator of Apt Chambers/Security Consultancy Services Ltd. in Lagos Nigeria. *See*

Exhibit J: Expert Report by Johnson Okebukola, Esq. [Doc. 18-1]. Mr. Okebukola is a former Assistant Commissioner of Police for Taraba State, Nigeria, as well as an attorney licensed in Nigeria. *Id*. Mr. Okebukola investigated Plaintiff's claim by contacting the agencies which purportedly issued the documents submitted to Mutual of Omaha; by visiting the alleged accident site and home addresses for Plaintiff, the Insured, and the "Eye Witness;" and by meeting with Plaintiff himself. After completing his investigation, Mr. Okebukola prepared a report for Worldwide Resources dated June 23, 2014. (Exhibt J: Doc. 18-2; Exhibit K: Worldwide Resources Report at 235-262).

Mr. Okebukola's investigation led him to conclude that most of the documents and information submitted by Plaintiff were suspect. First, he contacted the Lagos State University Teaching Hospital, Ikeja to verify the Medical Certificate of Cause of Death submitted by Plaintiff. (Exhibit K at 241). On behalf of the Chief Medical Director, Mrs. A.O. Akinlowon responded that the hospital had no record of Badmus Selem Babatunde in their records and that the Medical Certificate Cause of Death "is not authentic." *Id*. at 242.

Next, Mr. Okebukola tried to track down Abdul Lateef Salako, the individual who submitted an affidavit stating he saw the taxicab accident which caused the Insured's death. Although Mr. Salako had given his address as "Mechanic's Village, Abule Egba, Lagos," there was no Mechanics Village in the Abule Egba area of Lagos. Mr. Okebukola therefore attempted to locate the affiant in any mechanic's workshop, but had no success locating anyone who knew Abdul Lateef Salako or had heard of the accident. Mr. Okebukola concluded that the person who made the affidavit had used a fake name to hide his identity. *Id.* at 247.

7

The Death Certificate issued at Surulere Lagos registry on 27 February 2014 did appear to be authentic. *Id*. at 239. However, because it was issued based on the information in the sham Medical Certificate and the suspect affidavit, Mr. Okebukola concluded that the Death Certificate could not be relied upon as proof of the death or cause of death of Selem Babatunde Badmus. (Exhibit J: Doc. 18-1, p.2).

Mr. Okebukola also traveled to the accident scene to interview any witnesses who remembered the reported "ghastly" accident involving a tanker truck and a taxi cab. (Exhibit K at 247). No one knew anything about any such accident. He also contacted the Federal Road Safety Corps of Lagos State Sector Command, and they reported no record of a fatal motor traffic accident on 24 January 2014 on the Lagos-Ibadan Expressway involving a fuel tanker and a taxicab. *Id*. at 247, 250-251. Mr. Okebukola noted that such an accident would be expected to cause a serious traffic jam with many witnesses. Typically, an ambulance would be dispatched to the scene and there would be a police report with a photograph of the accident. However, no records of the alleged accident seem to exist. Therefore, Mr. Okebukola opined, "it is highly unlikely that Selem Babatunde Badmus died in an accident between a taxi and a fuel truck on 24 January 2014 on the Lagos-Ibadan Expressway." (Exhibit J: Doc. 18-1, p.2).

Mr. Okebukola also traveled to the address listed on the Insured's death certificate, which was also the address given by Plaintiff as the residence of the Insured while in Nigeria before his death. (Exhibit K at 252). Only commercial properties were located in that area, and none of the tenants had heard of the Insured. Attempts were also made to verify the address given by the Plaintiff as his address in Nigeria. However, it appeared that he did not live there, and that he may be using someone else's Post Office Box. *Id*. at 253.

2247664v.1

After several attempts, Mr. Okebukola reports that he did successfully meet with Plaintiff at All Souls Hospital, with which Plaintiff has some unnamed affiliation. *Id.* at 261. Mr. Okebukola took photos of Plaintiff which are included in the report. *Id.* at 257-58. Plaintiff refused to provide a written statement and "evaded" the investigator's request for an accurate home address. *Id.* at 261. Plaintiff told Mr. Okebukola that he had received a call from "Ashley," a Caucasian lady who came to Nigeria with his late brother, and she said the Insured did not return to the hotel room they were staying in. Plaintiff stated he did not know the name of the hotel or the address where they stayed in Nigeria. He does not know Ashley's last name, and Ashley left and returned to the U.S. with his brother's documents. He stated that the Insured had a green card and a Texas driver's license. He asserted further that the Insured "has a son, a daughter and the mother of his children and children are late. The late wife stay in the U.S. Ashley was only a girlfriend." *Id.*

Plaintiff then told the investigator he had gone to the hospitals in Lagos and finally found his brother at the Lagos State University Teaching Hospital ("LASUTH") in Ikeja, Lagos. *Id.* He identified his late brother and got the Medical Certificate to process the National Population Commission Death Certificate at their Lagos state office at Surulere, Lagos. Plaintiff reported that he met Lateef Salako at the LASUTH, but did not have his mobile number. He reported that he buried his brother at Epe town in Lagos State, that Ashley and some of his old friends came to the burial, and he conducted the service himself according to Islamic rites. He said there are no picture or video recordings of the event, but there are eye witnesses at Epe Town. As to the accident, he says there is no police report, but that he is trying to get a friend who is a police officer to check Sagamu area of Ogun State and stations near the accident site in Lagos State to see if the case was reported. He says he does not know exactly where the accident happened. He

said he does not know anyone at 25 Adelabu Street, Surulere, Lagos, but his aunt owns No. 23 Adelabu Street. *Id.*

### D.  **Denial of the Claim**

On July 10, 2014, Mutual of Omaha's Niki Showalter notified Plaintiff that, upon review of the documents submitted, benefits are not payable under the accident policy because there is not valid written proof of Selem Badmus's death or any proof of the accident occurring.  (Exhibit L at 205). Plaintiff was informed that the decision was based upon information developed through the claim investigation process.

Plaintiff contested the denial decision by e-mail dated July 19, 2014, complaining that the "failure to settle and pay the claim promptly … [was] causing the family of the late insured economic hardship, mental anguish, and additional misery," but failing to submit any additional information to support his claim (such as, for example, names of the family members). (Exhibit M at 195). Mutual of Omaha responded by e-mail dated July 24, 2014, explaining that, due to the nature of the death and the fact that it occurred in a foreign country, it was necessary to investigate the Insured's death using an outside investigative company. (Exhibit N at 193). The investigative company had a representative in Lagos who went to the various agencies to document the events that Plaintiff had described, and essentially, all of the documents were deemed to be invalid by the various governing entities that control these documents. In view of this information, there is not sufficient proof to consider any accidental death claim in this instance, and no benefits were payable. *Id.*

Plaintiff responded by e-mail dated July 25, 2014, arguing that the investigation referenced by Mutual of Omaha "either did not take place or was fraudulent." (Exhibit O at 189). Plaintiff asserted that he had received a call from a person identifying himself as "James

Odufuwa" from APT Chambers, but that he had declined to deal with that person. *Id.* Plaintiff then followed up with another e-mail on August 7, 2014, stating that he had attended a meeting the day before "between extended members of the family and closest friends and classmates of the late insured within Nigeria" and they were dissatisfied with Mutual of Omaha's handling of the claim. (Exhibit P at 190). Finally, Plaintiff again complained about the investigation by letter dated December 28, 2014. (Exhibit Q at 177-186). This letter gave a return address of 1430 Bell Shadow Ln. A, Houston, TX 77038 (which was the same address used by the Insured on his change of beneficiary form, and the same address Plaintiff has used on the pleadings he has filed in this lawsuit). *Id.* at 177. Mutual of Omaha responded to the appeal by letter dated January 14, 2015. (Exhibit R at 173-175). The letter reiterated that "sufficient proof of loss supporting accidental death has not been submitted" and invited Plaintiff to submit any additional information which might support his claim. *Id.* at 174. Instead, he filed this lawsuit

### E. **Discovery in this Litigation**

Plaintiff filed this lawsuit, pro se, on May 1, 2015 [Doc. 1]. Plaintiff's Original Complaint identifies Plaintiff's home address as 1430 Bell Shadow Ln. A, Houston, TX 77038 (the Insured's former address). He alleges claims and causes of action against Mutual of Omaha for breach of contract, breach of the common-law duty of good faith, and alleged violations of the Texas Insurance Code sections 541.060 (statutory bad faith), 541.061 (misrepresentation of insurance policy), and chapter 542 (prompt payment act).

Counsel for Defendant propounded discovery requests in an attempt to investigate Plaintiff's claim that Selem Babatunde Badmus had died on January 24, 2014 in a taxi accident in Lagos Nigeria. However, Plaintiff refused to provide any additional information which may have supported his claim. Plaintiff failed to respond to multiple requests from Defendant's

2247664v.1

counsel for dates when he could be available for his deposition. (*See* Exhibit S: E-mails dated 12/7/15, 12/14/15, 12/22/15; Exhibit T: E-mail dated January 6, 2016). Accordingly, the deposition was unilaterally noticed for April 5, 2016, but Plaintiff failed to appear, citing unspecified health problems that would leave him unavailable until mid-May. (Exhibit U: Defendant's Notice of Intention to Take Oral and Videotaped Deposition of Plaintiff Abdul Salam Badmus; Exhibit T: E-mails dated 2/12/16, 3/31/16, 4/4/16).

Additionally, Plaintiff refused to respond to Interrogatories and Requests for Production pertaining to the death of the Insured. (*See* Exhibit V: Plaintiff's Response to Defendant Reissued First Set of Interrogatories and Plaintiff's Response to Defendant Reissued Requests for Production). Of particular note, Plaintiff objected to, and refused to answer, the following requests:

- Identify the Insured's address from January 1, 2013 through January 2014 (*Id.* at 5, Response to Interrogatory No. 7)

- Identify and produce any communications with Dr. A.O. Olawale of Lagos State University Teaching Hospital,[2] the person who purportedly signed the Medical Certificate of Cause of Death of Selem Babatunde Badmus. (*Id.* at 4, Response to Interrogatory No. 5)

- Identify and provide communications with Abdul Lateef Salako,[3] the person who signed an Affidavit purporting to be an eye witness of the death of the Insured,

---

[2] A Dr. Lawal of the Lagos University Teaching Hospital has been identified as providing a fake death certificate in at least one Nigerian case involving an attempt to defraud an insurance company of life insurance benefits. *See* Exhibit W: Ephraim, Adjele, *Insurance Scam: 35-Year-Old Man Arraigned for Forging His Own Death,* The Trent On Line (Nov. 4, 2015).

[3] Records from the Michigan Department of Labor & Economic Growth reflect that Selem B. Badmus and Abdul-Lateef Salako incorporated a corporation named "Alias Society Inc." on August 4, 2005. Exhibit W. Defendant respectfully requests the Court to take judicial notice of the certified documents from the State of Michigan.

Selem Babatunde Badmus. (*Id.* at 4, Response to Interrogatory No. 4; *Id.* at 11, Response to Request for Production No. 10);

- Identify and produce communications with APT Chambers, the Nigerian investigators (*Id.* at 13, Response to Request for Production No. 20);

- Produce communications with any relative, friend, or other person regarding the complaint at issue in this suit; or with any wife, girlfriend or other family member of the insured. (*Id.* at 14, 17, Response to Request for Production No. 25, 39).

Because Plaintiff refused to provide any information specifying where the Insured resided prior to the alleged accident at issue or where any additional family members might reside, Defendant sought this information elsewhere. Defendant identified Joycelyn Marie Faggans as a person known to reside at 1430 Bell Shadow Lane, Unit A, Houston, Texas 77038, the address where Selem Babatunde Badmus had resided since at least January 28, 2011, when he designated Abdul Salam Badmus as his beneficiary. Further, Plaintiff was using her address as his service address in this legal proceeding, although he had asserted to Mutual of Omaha when seeking benefits under the Policy that he lived in Nigeria and did not know where his brother was living in Texas. Defendant considered that Ms. Faggans would have information regarding the circumstances surrounding the alleged death of the Insured because of their shared residence.

Defendant noticed the deposition of Joycelyn Marie Faggans for Monday, February 29, 2016 and subpoenaed the production of relevant documents from her. (Exhibit Y: Notice of Deposition of Joceylyn Faggans and Subpoena Duces Tecum). On February 26, 2016, Ms. Faggans filed a Motion to Quash and for Protection, arguing that she should not be required to testify or produce any documents under the spousal communication privilege, because she is

2247664v.1

married to the Plaintiff, Abdul Salam Badmus, and had been since 2013. [Doc. 21]. The Court denied Ms. Faggans's motion and ordered her to appear for her deposition and produce all responsive non-privileged documents by April 29, 2016. [Doc. 27]. Defendant sent two letters to Ms. Faggans and four e-mails to Mr. Badmus seeking to schedule their depositions, but received no response. *See* Exhibit Z: Letters dated 4/6/16 & 4/26/16; Exhibit S: E-mails dated 3/31/16, 4/4/16, 5/12/16, 5/20/16.

As Defendant was unable to question Plaintiff or his purported wife directly, information was sought elsewhere. Defendant obtained a copy of the Certificate of Marriage for Abdul Salam Badmus and Jocelyn Marie Faggans and found that the marriage took place on November 7, 2015. Exhibit AA: Marriage Certificate. [4] The sworn Application for Marriage License signed by Abdul Salam Badmus gives his date of birth as May 21, 1950. *Id.*, p. 3. This is contrary to the date provided on the certified Life Insurance Claim Statement for Beneficiaries, which was signed by Plaintiff, Abdul Salam Badmus under penalty of perjury and provided to Mutual of Omaha to support his claim for accidental death benefits. That previous sworn statement gave Plaintiff's own date of birth as May 28, 1946, but the birthdate of his purportedly deceased younger brother as May 21, 1950. *Compare id. with* Exhibit H at 372. Faced with this discrepancy, Defendant did further investigation and determined that, on May 18, 2015 (17 days after this lawsuit was filed), Selem Babatunde Badmus (who was alleged to have died on January 24, 2014, in Nigeria) was very much alive and filed a petition in Harris County District Court, seeking to change his legal name to Abdul Salam Badmus, the Plaintiff. (Exhibit CC: Petition to

---

[4] Defendant respectfully requests the Court to take judicial notice of the Application for Marriage License, Marriage License & Certificate and Certificate of Marriage of Abdul Salam Badmus and Joycelyn Marie Faggans. The Macy's and Walmart wedding registries for the event state that the November 7, 2015 wedding was between Joycelyn Faggans & Tunde Badmus. ("Tunde" appears to be a nickname for "Babatunde.") *See* Exhibit BB.

2247664v.1

Change the Name of an Adult). This, too, was filed under oath. *Id.* at 3. Thus, as of the date this lawsuit was filed, **Selem Babatunde Badmus was not dead**.

On the name change petition, Selem Babatunde Badmus stated the reason for changing his name was "I want my name to reflect my religious and personal beliefs, the essence of which is peace." *Id.* at 1. The application gave the birthdate for Selem Babatunde Badmus as May 21, 1950, and identified Michigan and Texas drivers license numbers as well as a U.S. Social Security Number and a home address of 1340 Bell Shadow Ln A, Houston, Harris TX 77038. *Id.*

The Harris County District Court granted the name change request and issued a Final Order on August 18, 2015 changing the name of Selem Babatunde Badmus to Abdul Salam Badmus. (Exhibit DD: Final Order Changing the Name of an Adult). A copy of the Texas drivers license of Selem Babatunde Badmus, the alleged deceased Insured who is not dead, was attached to the order granting the name change. *Id.* at 3. The photo on the drivers license may be compared to the photo of Plaintiff taken by the Nigerian investigator (*Compare with* Exhibit K at 257). Texas Drivers license records further confirm that **the alleged deceased Selem Babatunde Badmus is not dead, but just changed his name to that of the Plaintiff, Abdul Salam Badmus**. (See Exhibit EE).[5]

On July 18, 2016, the State of Texas indicted Abdul Salam Badmus for felony insurance fraud. (Exhibit A). The indictment states that a Grand Jury of Harris County, Texas found sufficient evidence to conclude:

> Abdul Salam Badmus … on or about March 07, 2014, did then and there unlawfully, With intent to defraud and deceive an insurer, and in support of a claim for payment of the value of two hundred thousand dollars or more under an insurance policy, present and cause to be presented to an insurer, namely, Mutual of Omaha, a statement that the Defendant knew to contain false and misleading material information, to-wit: that the insured, Selem Badmus, was dead.

---

[5] Defendant respectfully requests the court to take judicial notice of the Texas Driver's License Search Results for Badmus, Abdul Salam.

*Id.* On information and belief, as of the date of this motion Badmus has not been arrested as his whereabouts are unknown.

IV.

**ARGUMENTS AND AUTHORITIES**

A.     **Summary Judgment Standard of Review**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and identifying those portions of the record that demonstrate such absence, if possible. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999). Where the moving party has met its Rule 56 (c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts... [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 586-87 (*quoting* FED. R. CIV. P. 56(e)) (emphasis in original); and *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the non-moving party must produce admissible evidence that provides a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *see also Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636 (5th Cir. 1999). As explained by the United States Supreme Court:

> Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S 372, 380-81 (2007) (italic emphasis orig.).

When parties file cross-motions for summary judgment, each party's motion is reviewed independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014)

Here, the material facts are undisputed and Plaintiff cannot show any genuine issue for trial. His claims are blatantly contradicted by the record, fraudulent, and without merit. Defendant is entitled to summary judgment, as a matter of law.

B.  **There is No Genuine Issue for Trial on Plaintiff's Claims For Breach of Contract, Common-Law Bad Faith, or Alleged Violations of the Texas Insurance Code**

As this is a diversity case, the court should apply the substantive law of the state of Texas and federal procedural law. *Wiser-Brown Operating Co. v. St. Paul Surplus Ins. Co.*, 801 F.3d 512, 517 (5th Cir. 2015). To prevail on a claim for breach of contract under Texas law, a party must establish all four of the following essential elements: (1) the existence of a valid contract, (2) proof of the plaintiff's performance, (3) evidence of the defendant's breach, and (4) damages sustained as a result of the breach. *Valero Mktg & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Establishing breach of contract is a predicate to recovery for alleged violations of the Texas Prompt Payment statute, chapter 542 of the Texas Insurance Code. *See Wiser-Brown Operating Co.*, 801 F.3d at 518 (discussing). To recover under the Prompt Payment Statute, a Plaintiff must establish all of the following: (1) a claim under an insurance policy; (2) the insurer is liable for the claim; and (3) the insurer has failed to follow one or more sections of the Statute

with respect to the claim. *Id.* (citing *GuideOne Lloyds Inc. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830-31 (Tex. App.—Fort Worth 2008, no pet.)).

Even where a plaintiff can demonstrate that a claim was wrongfully denied, this does not necessarily establish breach of the common-law duty of good faith and fair dealing or for statutory bad faith violations under Chapter 541 of the Texas Insurance Code. *See Wiser-Brown Operating Co..*, 801 F.3d at 525-26; *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith. *Wiser-Brown Operating Co..*, 801 F.3d at 526; *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). Rather, the plaintiff can prevail only by showing that the insurer denied the claim when its liability has become reasonably clear. *Giles*, 950 S.W.2d at 56. An objective standard is used to determine whether "liability has become reasonably clear." *Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 67 (5th Cir. 2011). The inquiry is whether "a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." *Id.* (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 240 (Tex. 1995)). Further, while an insurer has an obligation to investigate a claim, that duty is not unlimited. *Thompson*, 664 F.3d at 69 (quoting *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998)). The burden is on the plaintiff to show that there is a material issue of fact about whether the insurer acted unreasonably in denying coverage or failing to investigate. *Id.* at 71. There is no liability if the insurer had any reasonable basis to deny coverage. *Wiser-Brown Operating Co.*, 801 F.3d at 525.

Here, Mutual of Omaha retained a retired Nigerian police detective and attorney to investigate the circumstances surrounding Plaintiff's claim. After a thorough investigation, the Nigerian investigator, Mr. Okebukola, concluded that the Medical Certificate of Cause of Death

18

submitted by Plaintiff "is fake," based on a letter from the purported issuing hospital stating the certificate "did not emanate from our hospital" and "is not authentic." (Exhibit K at 240, 242). The investigator also concluded that Abdul Lateef Salako, the person who submitted the purported "Eye Witness Affidavit," had used an address that did not exist and surmised that he had used a fake name to hide his identity. (*Id.* at 247). Finally, the investigator concluded that there had been "no accident on the Lagos Ibadan expressway near the area described by claimant, on January 24, 2014." (*Id.* at 247).

Relying on the results of the investigation conducted by Mr. Okebukola, Mutual of Omaha concluded that there was insufficient evidence that Selem Babatunde Badmus had died in an accident to justify payment of accidental death benefits. (Exhibit L). Plaintiff has not submitted any competent evidence to indicate that a reasonable insurer under similar circumstances would have done otherwise. Therefore, there is no basis to support a common-law or statutory claim for bad faith.

Moreover, information obtained after the claim was denied proves that Mutual of Omaha acted correctly in denying the accidental death claim. Selem Babatunde Badmus was still alive at the time the claim was submitted, at the time this lawsuit was filed, and today. (*See* Exhibits CC, DD, EE). Selem Babatunde Badmus and Abdul Salam Badmus are not brothers; they are the same person. Further, the evidence indicates that Selem Babatunde Badmus has been in cahoots with purported eye witness Abdul Lateef Salako since at least 2005, when the two incorporated a Michigan company called "Alias Society Inc." (*See* Exhibit W). Because the Insured is not dead, no accidental death benefits are owed, and Mutual of Omaha has not breached the terms of the Policy. Nor is Mutual of Omaha liable for any statutory extra-contractual damages. Summary judgment should be granted for Defendant, as a matter of law.

C.  **There Has Been No Misrepresentation by Mutual of Omaha**

Plaintiff contends that Mutual of Omaha violated Chapter 541 of the Texas Insurance Code by "making an untrue statement of material fact," "failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made"; "making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact"; "making a material misstatement of law"; and/or "failing to disclose a matter required by law to be disclosed." Complaint, p. 11. However, Plaintiff has not provided any evidence to show that Mutual of Omaha supplied any false information to him, whatsoever. While he complains that it was not made clear that APT Chambers was investigating the claim in Nigeria on behalf of Worldwide Resources and Mutual of Omaha, he does not explain why this confusion rises to the level of a "material misstatement." Mutual of Omaha repeatedly made direct requests that Plaintiff provide information to show that the Insured had died in a taxi accident and he failed to do so – because the Insured is not dead. It is Plaintiff who has supplied the false information here. Mutual of Omaha's Motion for Summary Judgment should be granted.

D.  **Request for Fees**

By signing his pleadings in this Court, Plaintiff Abdul Salam Badmus f/k/a Salem Babatunde Badmus has certified that his complaint against Mutual of Omaha was not presented for any improper purpose, that his claims and legal contentions are warranted by existing law or by a nonfrivolous argument, and that his factual contentions have evidentiary support. FED. R. CIV. Proc. 11(b). As detailed above, none of these representations made by Plaintiff are true. Additionally, Plaintiff perjured himself by signing the certified Life Insurance Claim Statement for Beneficiaries giving a false name and false birthdate and falsely stating that he does not have

a US Social Security number. (*See* Exhibit H at 372). As a result of Plaintiff's perjuries, Mutual of Omaha has been forced to retain the undersigned counsel to defend and investigate this frivolous and fraudulent lawsuit. Defendant respectfully requests this Court to exercise its inherent power to sanction Plaintiff by requiring him to pay Defendant's reasonable and necessary attorney's fees and costs incurred in defending this suit, and allowing Defendant to provide a fee statement upon entry of judgment.

V.

**CONCLUSION**

WHEREFORE, Defendant Mutual of Omaha Insurance Company respectfully requests the Court to issue an Order granting Defendant's Motion for Summary Judgment and awarding Defendant's reasonable and necessary attorney's fees and costs; and for all other and such further relief to which Defendant may be justly entitled, whether in law or in equity.

Respectfully submitted,

By:     */s/Linda P. Wills*
        Linda P. Wills
        Texas Bar No. 21661400
        Federal I.D. No. 12566
        909 Fannin, Suite 3300
        Houston, Texas 77010
        Telephone: 713/353-2000
        Telecopy:   713/785-7780

**ATTORNEY-IN-CHARGE FOR DEFENDANT**
**MUTUAL OF OMAHA INSURANCE COMPANY**

**OF COUNSEL:**

**WILSON, ELSER, MOSKOWITZ,**
   **EDELMAN & DICKER, LLP**
Marjorie Cohen
State Bar No. 24031960
Federal I.D. No. 34303
909 Fannin, Suite 3300
Houston, Texas 77010
Telephone: 713/353-2000
Telecopy:   713/785-7780

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the above and foregoing document has been delivered to all counsel of record and unrepresented parties in accordance with the Federal Rules of Civil Procedure on this the 15th day of August, 2016.

***Via CMRRR***
***& Regular U.S. Mail***
Abdul Salam Badmus, Pro Se
1430 Bell Shadow Ln., #A
Houston, TX 77038

                */s/ Marjorie L. Cohen*
                **Marjorie L. Cohen**

22