UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ABDUL SALAM BADMUS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-1149 |
| | § | |
| MUTUAL OF OMAHA INSURANCE | § | |
| COMPANY (MOOIC), | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court in the above-referenced cause are Plaintiff Abdul Salam Badmus ("Plaintiff" or "Abdul") and Defendant Mutual of Omaha's ("Defendant" or "Mutual of Omaha") cross motions for summary judgment and cross motions to strike. Docs. 28, 31, 33, 37. Having considered the parties' filings, the record, and relevant law, the Court denies Plaintiff's Motion to Strike, Doc. 37, grants Defendant's Motion to Strike, Doc. 33, denies Plaintiff's Motion for Summary Judgment, Doc. 28, and grants Defendant's Motion for Summary Judgment, Doc. 31. Accordingly, Plaintiff's pending Motion in Limine, Doc. 32, is now moot. Defendant is granted thirty (30) days to clarify the Rule 11 relief that it requests.

**I. Background**

On August 10, 2009, Mutual of Omaha issued an Accidental Death Insurance Policy to Selem Babatunde Badmus ("Selem"). Doc. 31-4. The policy provides a benefit of $750,000 for loss of life to Selem caused by injury sustained while riding as a passenger in any public land, air or water conveyance provided by a "Common Carrier"—defined as an entity licensed to transport passengers for hire in any such conveyance. *Id.*

In his original policy application, Selem listed his birthdate as May 21, 1950, and gave a

Michigan address as his home address. *Id.* at 13. He listed no beneficiary. *Id.* However, in a letter dated July 22, 2013, Selem designated his brother, Plaintiff Abdul, as his policy beneficiary. Doc. 31-5. This letter reflected Selem's new home address as 1430 Bell Shadow Lane #A, Houston, TX 77038. On August 5, 2013, Mutual of Omaha sent an endorsement to Selem at the Bell Shadow Lane address confirming his designation of Plaintiff as beneficiary. Doc. 31-6.

On March 7, 2014, Plaintiff sent Mutual of Omaha a letter stating that Selem died in "a ghastly automobile accident involving the Taxi Cab he hired and was riding on 24[th] January, 2014." Doc. 31-7 at 1. In support of his claim, Plaintiff included an eye witness affidavit, death certificate, and medical certificate of cause of death. *Id.* at 5–7. Plaintiff's letter reflected that his home address was in Nigeria. *See id.* at 1.

In order to proceed with processing Plaintiff's claim, on March 31, 2014, Mutual of Omaha responded by sending Plaintiff a number of forms to complete and requesting supporting documentation. Doc. 31-8. On April 3, 2014, Mutual of Omaha repeated its request for forms and documentation via email. Doc. 31-9. On April 24, 2014, Plaintiff responded by letter but did not provide the requested documents. *See* Doc. 31-10. Instead, he stated that his case was complicated because of a number of cultural factors. *Id.* In the certified "Life Insurance Claim Statement for Beneficiaries" form that Plaintiff signed (under penalty of perjury) and included with this response, he listed his birthdate as May 28, 1946, and his deceased brother's as May 5, 1950. Doc. 31-10 at 9. He again listed a Nigerian home address for himself. *See id.*

Due to a number of discrepancies and omissions on the forms that he submitted in his response, on May 6, 2014, Mutual of Omaha retained Worldwide Resources, Inc. ("Worldwide") to investigate the insured's death. Doc. 31-13. It also dispatched another letter to Plaintiff on May 15, 2014, reiterating that "due to the nature and circumstances surrounding your brother's

death, it is necessary for us to obtain additional information." Doc. 31-11.

After an extensive on-the-ground investigation, Worldwide's investigator concluded that most of the documents and information submitted by Plaintiff were suspect. *See* Doc. 31-13. As a result, on July 10, 2014, Mutual of Omaha notified Plaintiff by letter that benefits were not payable under the accident policy because there was no valid written proof of Selem's death or the accident. Doc. 31-14. On July 19, 2014, Plaintiff contested the denial decision by email. Doc. 31-15. Mutual of Omaha responded by email dated July 24, 2014, explaining that due to the nature of Selem's death and the fact that it occurred in a foreign country, the company had investigated his death using an outside company and that company had concluded that all of the documents Abdul had submitted with his claim were invalid. Doc. 31-16.

Over the next week, Plaintiff responded to the denial with two emails complaining of Mutual of Omaha's handling of the case. Docs. 31-17, 31-18. Several months later, on December 28, 2014, Plaintiff sent a notice letter to Mutual of Omaha, advising the company that Plaintiff would seek legal action due to the company's alleged "illegal" denial of his claim. Doc. 31-19. Notably, this letter now listed Plaintiff's return address as 1430 Bell Shadow Lane #A, Houston, TX 77083—the same address his allegedly deceased brother Selem used on his July 22, 2013 designation-of-beneficiary letter. *Id.* On January 14, 2015, Mutual of Omaha again responded by letter, notifying Plaintiff that "sufficient proof of loss supporting accidental death has not been submitted" and inviting Plaintiff to submit further documentation. Doc. 31-20.

On May 1, 2015, Plaintiff filed this lawsuit, pro se. Doc. 1. Plaintiff's Original Complaint again identifies his home address as 1430 Bell Shadow Lane #A, Houston, TX 77083. *Id.* Plaintiff asserts five claims against Defendant in his complaint: (1) breach of contract; (2) unfair settlement practices/statutory bad faith; (3) misrepresentation of insurance policy; (4) violations

of the Prompt Payment statute and other provisions of the Texas Insurance Code; and (5) common-law bad faith. Doc. 1.

During discovery, Plaintiff refused to provide additional information to Mutual of Omaha, failed to cooperate with scheduling or appear for his deposition, and objected to and refused to answer a number of Requests for Production and Interrogatories. Doc. 31 at 12–13. As a result, Mutual of Omaha conducted its own investigation. This investigation revealed some interesting facts that call the veracity of Plaintiff's claims into question.

To begin, after investigating Plaintiff's address, Mutual of Omaha discovered that another individual, Joycelyn Marie Faggans, was known to reside at 1430 Bell Shadow Lane #A, Houston, TX 77083. Mutual of Omaha subsequently discovered that this individual was actually Plaintiff's spouse. Interestingly, Faggans and Plaintiff's marriage certificate, dated November 7, 2015 (after this lawsuit was well underway), lists Plaintiff's date of birth as May 21, 1950—a date contrary to what he listed on the certified Life Insurance Claim Statement for Beneficiaries that he provided to Mutual of Omaha under penalty of perjury in April 2014. *Compare* Doc. 31-29, *with* Doc. 31-10 at 9. The birth date listed for Plaintiff on his marriage certificate instead matches the birthdate Plaintiff listed as his allegedly deceased brother Selem's birthdate on the Life Insurance Claim Statement for Beneficiaries form. *Id.*

Defendant also uncovered a series of name change forms wherein a "Selem Babatunde Badmus" residing at 1430 Bell Shadow Lane #A, Houston, TX 77038 applied for a name change to "Abdul Salam Badmus" (Plaintiff's name) on May 21, 2016—more than two years after Selem allegedly died in Nigeria. Docs. 31-31, 32. Furthermore, after running both of these names through the driver-license registry to check for the existence of other individuals with the same names as Plaintiff or his allegedly deceased brother, Mutual of Omaha discovered that Selem and

Abdul are one and the same individual. *See* Doc. 31-33.

On July 18, 2016, the State of Texas indicted Plaintiff for felony insurance fraud for fraudulently representing to Mutual of Omaha that Selem was dead. Doc. 31-3. Although Plaintiff has not been arrested for that offense and his whereabouts are presently unknown, Plaintiff's civil case before this Court remains pending and the parties' pending motions are now ripe for adjudication.

### II. Legal Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewed in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1996). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The movant initially bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 885 (1990) (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. When the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with

competent summary judgment evidence of the existence of a genuine dispute of material fact concerning every element of its cause of action in order to defeat the motion for summary judgment. *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994); *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). There is no genuine issue for trial if a rational trier could not find for the nonmoving party based on the evidence presented. *City Pub. Serv. Bd.*, 40 F.3d at 712–13 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88 (1986)).

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (internal citation and quotation marks omitted) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1995) (quoting *Solo Serve Corp. v. Westtown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991) (for the party opposing the motion for summary judgment, "'only evidence—not argument, not facts in the complaint—will satisfy' the burden."). Likewise, unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Instead, the nonmovant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (quoting *Celotex*, 477 U.S. at 324) (internal quotation marks omitted).

In ruling on a motion for summary judgment, the court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant, but the court may not make credibility determinations or weigh the evidence. *Turner v. Baylor*

*Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### III. Analysis

#### a. Motions to Strike

For the reasons outlined in greater detail in Defendant's Motion to Strike, Doc. 33, the Court grants Defendant's Motion and strikes the following of Plaintiff's Exhibits from the record: C-1, C-2, C-4, C-7, D-1, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9, D-10, D-11, D-12, D-13, D-14, L-3, L-4, M-3, M-4, P-3, P-4, P-5 and P-6.[1] Defendant argues that these exhibits are inadmissible hearsay, do not comply with the affidavit rule, are irrelevant, and/or were responsive to Defendant's discovery requests but were not produced until they were attached to Plaintiff's Motion for Summary Judgment. Doc. 33. After thoroughly reviewing Defendant's arguments, relevant law, and Plaintiff's proffered exhibits, the Court agrees.

The Court also finds that Plaintiff's Motion to Strike should be denied for the reasons outlined in Defendant's Response thereto. *See* Doc. 40. In his Motion to Strike, Plaintiff argues that Defendant's contested exhibits—A[2], CC[3], DD[4], X[5], and W[6], as well as page 12 of Exhibit B[7]—are prejudicial, irrelevant, and/or included for the purpose of harassing him. Doc. 37. The Court disagrees.

Rule 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The scope of

---

[1] These exhibits correspond to the following docket numbers and pages: Doc. 30, pp. 12-14, 16; Doc. 30-1, pp. 1-33; Doc. 30-2, pp. 1-4; Doc. 30-3, pp. 1-7, 11-13; Doc. 30-4, pp. 1-23.
[2] Doc. 31-3 (the Texas Indictment).
[3] Doc. 31-31 (Petition to Change the Name of Adult).
[4] Doc. 31-32 (Final Order Changing the Name of Adult).
[5] Doc. 31-26 (Alias Society, Inc. Corporate Documents).
[6] Doc. 31-25 (Internet Article).
[7] Doc. 31-4 (Policy Application).

Rule 403 is narrow; exclusion is to be applied cautiously and in only those few circumstances in which the danger of unfair prejudice "*substantially* outweigh[s] the probative value of the evidence." *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007); *United States v. El-Mezain*, 664 F.3d 467, 508 (5th Cir. 2011). Here, Plaintiff simply conclusorily asserts that Exhibit A, the Texas Indictment, is prejudicial. This is insufficient to mandate exclusion. Moreover, the remainder of Defendant's contested exhibits are highly relevant because they go directly to the heart of the issue in this case—whether Defendant wrongfully withheld insurance proceeds from Plaintiff. As explained further below, if the insured and Plaintiff are actually the same person, as Defendant alleges, Plaintiff has no cognizable claim against Defendant. Accordingly, Plaintiff's Motion to Strike is denied.

### b.  Motions for Summary Judgment

#### i.  *Breach of Contract & Prompt Payment Statute Claims*

"The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) *performance or tendered performance by the plaintiff;* (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ)). When the evidence is undisputed regarding a person's conduct under a contract, the court as a matter of law determines whether the conduct shows performance or breach of a contract obligation. *Id.* (citing *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied)).

In this case, based on the record, there is no question of material fact that the insured is alive. Accordingly, no accidental death benefits are owed and Mutual of Omaha has not breached

any of its contractual obligations by refusing to pay benefits. Consequently, Defendant is entitled to summary judgment on Plaintiff's breach-of-contract claim. Moreover, because violations of the Texas Prompt Payment Statute are predicated on establishing breach of an insurance contract, Defendant is likewise entitled to summary judgment on those claims. *See Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015) (stating that an insured must establish a valid claim under an insurance policy for which the insurer is liable before the insured can recover under the Texas Prompt Payment Statute).

### ii. Statutory & Common-Law Bad Faith Claims

"Under the common law, an insurer breaches the duty of good faith and fair dealing if it 'has no reasonable basis for denying or delaying payment of a claim.'" *Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 429 (5th Cir. 2007) (per curiam) (quoting *Higginbotham v. State Farm Mut. Auto. Ins.* Co., 103 F.3d 456, 459 (5th Cir. 1997)). This "reasonable-basis test" also applies to a cause of action against the insurer for bad faith under the Texas Insurance Code. *Id.* (citing *Higginbotham*, 103 F.3d at 460). "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) (citations omitted).

In this case, the Court concludes that there is no legally sufficient evidentiary basis for a trier of fact to conclude that Defendant violated Texas Insurance Code § 541 or the common-law duty of good faith and fair dealing. As already mentioned, there is no liability if the insurer had any reasonable basis to deny coverage. *See Weiser-Brown Operating Co.*, 801 F.3d at 525–26. Mutual of Omaha thoroughly investigated Plaintiff's claim and concluded that it was fraudulent. Information Defendant received after the initial denial only further supported and confirmed the company's initial decision. Defendant, therefore, had more than a reasonable basis for denying

9 / 12

Plaintiff's claim. Moreover, Plaintiff has submitted no competent evidence to challenge the evidence relied on by Mutual of Omaha in reaching its decision or to indicate that another insurer in the same situation would have done otherwise. Consequently, Defendant's Motion for Summary Judgment on Plaintiff's statutory and common-law bad faith claims is granted and these claims are likewise dismissed with prejudice.

### iii.   Misrepresentation

Plaintiff also asserts that Defendant violated Chapter 541 of the Texas Insurance Code by "making an untrue statement of material fact"; "failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made"; "making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact"; "making a material misstatement of law"; and "failing to disclose a matter required by law to be disclosed." Doc. 1 at 11.

At the outset, the Court finds that the last of these purported misrepresentations are not representations at all. Section 541.051 of the Insurance Code defines a misrepresentation as "an estimate, illustration, circular, or statement." Tex. Ins. Code § 541.051. Moreover, Plaintiff fails to present any competent evidence to support his conclusory allegations as to the other alleged misrepresentations. Accordingly, summary judgment in Defendant's favor is warranted.

### c.   Attorney's Fees and Sanctions

Pursuant to Rule 11(a), pleadings, written motions, and other papers must be signed by an attorney of record, or by a party proceeding pro se. Fed. R. Civ. P. 11(a). Rule 11(b)(3) provides that an attorney or unrepresented party presenting such documents to the court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Violations of Rule 11 are punishable by sanction, which may be imposed in two situations. First, a party may make a motion for sanctions. *See* Fed. R. Civ. P. 11(c)(2). Such a motion "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." *Id.* Moreover, "[t]he motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service. *Id.* Alternatively, the Court may, on its own initiative, order a party to show cause why conduct specifically described in the order violates Rule 11(b). Fed. R. Civ. P. 11(c)(3).

Two circumstances determine what sanctions may be imposed against whom: (1) the manner in which the Court determines whether sanctions are warranted (i.e., option one or two above); and (2) whether the party is represented. *See* Fed. R. Civ. P. 11(4), (5). For example, monetary sanctions may not be imposed for sua sponte orders "'unless [the court] issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.'" *Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374, 377–78 (5th Cir. 2008) (alteration in original) (quoting Fed. R. Civ. P. 11(c)(5)(B)). Thus, "[t]he rule's clear language allows for an award of attorney's fees and other expenses *only* 'if imposed on motion.'" *Id.* (quoting Fed. R. Civ. P. 11(c)(4)) (citations omitted). *See also Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 455 (5th Cir. 1998) ("[W]here sanctions are imposed under Rule 11[] by a district court on its own initiative . . . the award of attorney's fees . . . [does not] constitute a valid sanction. Specifically, an award of attorney's fees is authorized only 'if imposed on motion and warranted for effective deterrence'").

In this case, Defendant requests the Court "exercise its inherent power [pursuant to Rule 11(b)] to sanction Plaintiff by requiring him to pay Defendant's reasonable and necessary attorney's fees and costs incurred in defending this suit, and allowing Defendant to provide a fee statement upon entry of judgment." Doc. 31 at 21. However, Defendant has not submitted its request for fee sanctions as a separate motion. *See id.* Accordingly, the only sanctions the Court may impose are limited to nonmonetary sanctions or a monetary penalty payable to the court— and only after the Court has issued a show-cause order. Fed. R. Civ. P. 11(c)(4), (5)(B). Because this is inconsistent with Defendant's initial request, the Court grants Defendant a limited, thirty-day opportunity to clarify its request in the proper format should it so desire.

## IV. Conclusion

For the forgoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Strike, Doc. 33, and Motion for Summary Judgment, Doc. 31, are **GRANTED**. Plaintiff's Motion to Strike, Doc. 37, and Motion for Summary Judgment, Doc. 28, are **DENIED**. Accordingly, Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE** and all other pending motions, including Plaintiff's Motion in Limine, Doc. 32, are, therefore, **MOOT**.

Finally, pursuant to its request for fees and sanctions, Defendant is hereby

**ORDERED** to file a separate Rule 11 motion for sanctions within thirty (30) days of this Order should it seek to clarify the monetary relief it seeks.

SIGNED at Houston, Texas, this 9th day of February, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

12 / 12